IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Naim Qasemi<br>A# 029-091-854<br><br>   *Petitioner*,<br><br>  v.<br><br>Merrick B. Garland<br>  U.S. Attorney General;<br>Alejandro Mayorkas<br>  Secretary of the Department of<br>  Homeland Security;<br>Joseph E. Freden<br>  in his official capacity as<br>  Deputy Field Office Director and<br>  Administrator of Buffalo Federal<br>  Detention Facility<br><br>   *Respondent*. | **VERIFIED PETITION FOR WRIT OF**<br>**HABEAS CORPUS PURSUANT**<br>**TO 28 U.S.C. § 2241**<br><br>25 cv 6020 FPG |

*FILED JAN 0 8 2025, MARY C. LOEWENGUTH, CLERK, WESTERN DISTRICT OF NY*

## INTRODUCTION

1. My name is Naim Qasemi A# 029-091-854 ("Mr. Qasemi").

2. Mr. Qasemi is a native and citizen of Afghanistan.

3. Mr. Qasemi has resided in the United States continuously for 35 years. *See Exhibit A.*

4. Mr. Qasemi entered the United States on June 9, 1989, when he was ten years old with refugee status, as an I94. He was granted political asylum on or about 1997.

5. In 2007 Mr. Qasemi's political asylum was revoked due to in absentia, and an order of exclusion was given to him by the Immigration Judge. When revoked, he was in custody by the U.S. Immigration and Customs Enforcement ("ICE"). Mr. Qasemi was never notified of that Immigration Court hearing thus he was never produced by ICE for his initial proceedings.

6. Subsequently, Mr. Qasemi filed a Motion to Reopen, which was denied on June 20, 2011.

7. After the order of exclusion in 2007, ICE attempted to remove Mr. Qasemi to Afghanistan. Afghanistan refused to accept Mr. Qasemi, and he was released by ICE.

8. In 2010 ICE again tried to deport Mr. Qasemi, however, they could not obtain his travel documents because Afghanistan does not recognize him as a citizen. As a result, ICE released him under an order of supervision.

9. On February 16, 2021, Mr. Qasemi plead guilty to criminal contempt in Manhattan, New York.

10. On May 1, 2024, Mr. Qasemi was picked up by ICE in New York's Department of Corrections Rikers Island Queens, New York, and brought to the Buffalo Federal Detention Facility ("BFDF").

11. Since Mr. Qasemi's arrival at the BFDF he has been inquiring through the tablet's request application, about the status of his deportation in order to cooperate with his removal. In

fact, he has complied with all served documents such as the Warning for Failure to Depart Form I-229(a).

12. On or about June 20, 2024, through the United States Postal Service, Mr. Qasemi tried to contact the Afghanistan Consulate in New York, NY, and the Embassy of Afghanistan in Washington D.C., to inquire if they can issue him travel documents. But this would seem impossible because there is no Afghanistan Consulate Offices in the United States. As of March 2022, the Taliban closed all Afghanistan Consulate Offices in the United States and relocated them in Qatar.

13. On August 14, 2024, Mr. Qasemi was informed by his Deportation Officer that he was being deported to Afghanistan on a flight scheduled for the same day. He was then informed approximately four hours later that his flight had been canceled and was being rescheduled imminently.

14. Mr. Qasemi, through counsel, has refiled the Motion to Reopen and Emergency Stay of Removal with the New York, NY Immigration Court on August 14, 2024 via overnight mail. It was received on August 20, 2024, and remains pending.

15. On October 21, 2024, ICE officers attempted and failed to remove Mr. Qasemi to Afghanistan by flying him to Abu Dhabi, United Arab Emirates.

16. Mr. Qasemi was taken to the Buffalo, NY airport from BFDF and placed on a Delta Airlines commercial flight from Buffalo, NY to New York City, NY (JFK) by ICE Agents.

17. The identity documents provided to Mr. Qasemi for this and subsequent flights were a photocopy of a Tazkira Identity Card, and an ICE Certificate of Identity (Form I-269), with incorrect names for both his mother and father. The Tazkira Identity Card does not have a picture of Mr. Qasemi, and while the ICE Certificate of Identity (Form I-269) does have a picture, it

clearly states that "A national passport or any form of travel documents cannot be obtained for travel to [Afghanistan]." Mr. Qasemi has no other foreign identity documents.

18. Mr. Qasemi was then placed on a United Emirates Air commercial flight from New York City, NY (JFK) to Abu Dhabi, United Arab Emirates (UAE).

19. Upon landing in the UAE, Mr. Qasemi encountered UAE law enforcement, who refused him entry into the country because he did not have an official travel document to enter Afghanistan. Mr. Qasemi spoke with a law enforcement officer in Arabic who informed him he was denied entry due to insufficient and fraudulent identity documents.

20. Please take notice that the Tazkira Identity Card provided by ICE is from the communist regime of Dr. Najeep Belah—who was hung and dragged in the streets by the Taliban in 1996. Considering this type of history, the UAE law enforcement officers warned Mr. Qasemi that if he entered Afghanistan with these particular credentials he would be considered a traitor and therefore killed because the Taliban is currently in power in Afghanistan. This is not to mention that ICE did not have any valid passport or any valid travel documents that lawfully allowed Mr. Qasemi entry into Afghanistan.

21. After an argument between ICE officers and UAE law enforcement, Mr. Qasemi was taken back to the United States on October 24, 2024.

22. Upon return to the United States, Mr. Qasemi was again detained at the BFDF by ICE officers. He was immediately placed in the Special Housing Unit ("SHU") on the allegations he refused deportation.

23. After the completion of Mr. Qasemi's SHU punishment, he was placed in general population at the BFDF, where his conditions of detention are akin to a maximum security prison because he is locked inside a cell for an average of nineteen hours everyday.

24. Mr. Qasemi did not refuse deportation. ICE accuses him of "willfully refus[ing] deportation to Afghanistan by refusing to board the aircraft, thereby hindering ICE's removal efforts." Mr. Qasemi has not refused removal and has always cooperated with ICE since 2007, 2010, and as of now in 2024.

25. Mr. Qasemi willfully boarded the aircrafts all the way to the UAE. He has the flight ticket stubs and receipts of food items during his travel. It was then that UAE law enforcement officers prevented ICE's efforts of removal because they did not have the proper travel documents for Mr. Qasemi.

26. Mr. Qasemi entered a grievance against these allegations at the BFDF.

27. ICE upheld their charge against Mr. Qasemi suggesting that he failed to comply with his removal, whereby he resulted in a punishment of 10 days in the SHU.

28. On December 17, 2024, around 10:15 a.m., in the presence of BFDF LT. Sikorski, Mr. Qasemi spoke to the Afghanistan Consulate Office in Canada, which they expressed to Mr. Qasemi that they are unable to produce travel documents for him.

29. Moreover, the Afghanistan Consulate Office in Canada told Mr. Qasemi that they would be sending his A-File back to ICE because they cannot prove he is an Afghanistan citizen, therefore, Mr. Qasemi is being rejected.

30. According to Mr. Qasemi's Deportation Officer R. Wistner, ICE is violating the Federal Aviation Administration's rules and regulations because the proof of identity ICE produced on his behalf states specifically that it is not a passport or travel document and the Airline is breaking their own policy by accepting this form of identity. By the proper procedure one must have a passport or travel document to board the plane. Which is why DHS/ICE offers the Airline a certain amount of money to break their own procedures so that they may deport him without a

4

passport, travel document or without any authorization from the Afghanistan government.

31. Mr. Qasemi is currently being detained by DHS pursuant to 8 U.S.C. § 1231(a)(6) because: (1) Mr. Qasemi has a final order of removal, and (2) because the ninety-day removal period has now elapsed.

32. Despite holding Mr. Qasemi in immigration detention for more than six months after receiving a final order of removal, DHS has not been able to effectuate his removal. Given DHS's delay thus far, there is no significant likelihood that he will be removed from the country in a reasonably foreseeable time. *See generally Zadvydas v. Davis*, 533 U.S. 678 (2001).

33. Accordingly, Mr. Qasemi respectfully request that the Court use its authority under 28 U.S.C. § 2243 to order the Respondent to file an answer and return within three days, unless they can show good cause for additional time. *See* 28 U.S.C. § 2243 (stating that an order to show cause why a petition for a writ of habeas corpus should be denied "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed").

34. In order to permit full judicial review of the claims herein and requested relief, Mr. Qasemi also respectfully request that the Court order the Respondent not to transfer him outside the jurisdiction of this Court pending consideration of this Petition.

## PARTIES

35. Petitioner, Naim Qasemi, is detained at the Buffalo Federal Detention Facility.

36. Respondent Joseph E. Freden, is sued in his official capacity as the Officer-in-Charge of the Buffalo Federal Detention Facility, at which Petitioner is currently detained.

## JURISDICTION AND VENUE

37. This Court has jurisdiction under the United States Constitution. U.S. CONST. art. I § 9, cl. 2. This Court also has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2241 (habeas corpus), and 28 U.S.C. § 1651 (All Writs Act).

38. Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

39. Venue is proper in the U.S. District Court for the Western District of New York because Petitioner is currently being detained at the Buffalo Federal Detention Facility in Batavia, New York, which is within the Western District. *See* 28 U.S.C. § 1391(e).

## EXHAUSTION OF REMEDIES

40. There is no statutory exhaustion requirement for a petition challenging immigration detention. *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014).

41. Mr. Qasemi is not required to exhaust administrative avenues to challenge his detention because the statutory authority that permits his detention provides no administrative vehicle for doing so. *See* 8 U.S.C. § 1231(a)(6); *see also Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.").

## LEGAL ARGUMENT

42. The Supreme Court has stated that "[f]reedom from . . . government custody [and] detention lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Supreme Court further noted in Zadvydas that "[a] statute permitting indefinite detention of a [noncitizen] would raise a serious constitutional problem." *Id.* at 690.

43. The Due Process clause applies to all persons in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 ; *see also Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.").

44. Congress authorized the DHS to detain noncitizens during a statutorily defined "removal period," during which the Department may effectuate the noncitizen's removal from the United States. 8 U.S.C. § 1231(a)(1). The removal period typically lasts for ninety days and starts at the latest of: (1) the date an order of removal becomes administratively final; (2) if a removal order is judicially reviewed and a stay of removal has been ordered, the date of the court's final order; or (3) the date the noncitizen is released from any detention other than for immigration purposes. 8 U.S.C. § 1231(a)(1)(B).

45. Under 8 U.S.C. § 1231(a)(2), noncitizens subject to final orders of removal "shall" be detained during the first ninety days—the "removal period"—and they "shall" be removed during that period under § 1231(a)(1). Under 8 U.S.C. § 1231(a)(6), however, the government "may" continue detention beyond the 90-day removal period if a noncitizen falls within certain broad categories of removability or is determined "to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

46. The Supreme Court in *Zadvydas*, in order to avoid the serious due process concerns that would be presented by permitting detention for an indefinite period of time, construed 8 U.S.C. § 1231(a)(6) to authorize detention only where it is significantly likely that removal will occur in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 690. After a noncitizen meets his or her initial burden to show that no such likelihood of removal exists, the burden shifts to the

Government to "respond with evidence sufficient to rebut [the noncitizen's] showing." *Id.* at 701.[1]

47. If a court finds removal is reasonably foreseeable, the court may still order release, and may consider the risk posed by the individual to community safety in determining whether to do so. *Id.* at 700. While dangerousness may justify immigrant detention in certain cases, the Court "uph[o]ld[s] preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691.

48. Mr. Qasemi's removal period began on on or about February 2, 2007.

49. Mr. Qasemi's removal period has been expired since 2007, ninety days after his current detention by ICE. He is detained beyond the ninety days pursuant to 8 U.S.C. § 1231(a)(6).

50. The DHS's persistent inability to effectuate my removal provides threshold evidence that there is not a significant likelihood of removal in the foreseeable future. *See Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (*quoting Singh v. Whitaker*, 362 F. Supp. 3d 93, 102-03 (W.D.N.Y. 2019)); *see also D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 404 (W.D.N.Y. 2009) ("[T]he burden upon the [detained person] is not to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite[.] . . . Rather, . . . the [detained person] need only provide good reason to believe that removal is not significantly likely in the reasonably foreseeable future.") (quoting parties' briefing in the case) (internal quotation marks omitted).

51. Accordingly, unless the Respondent can supply sufficient evidence to the contrary, they

---

[1] To the extent Respondent claims otherwise, the Supreme Court's decision in *Johnson v. Arteaga-Martinez* has no application here. 142 S. Ct. 1827 (2022). *Arteaga-Martinez* merely held that, as a matter of statutory construction, 8 U.S.C. § 1231(a)(6) does not require bond hearings after six months of detention. *Id.* at 1833. *Arteaga-Martinez* does not reach the question of what due process requires under the Constitution, nor does it undermine the presumption affirmed in *Zadvydas* that post-order detention becomes unreasonable after six months. *Id.* at 1834-35.

8

should now release me from their custody because Mr. Qasemi's "continued detention [has become] unreasonable and [is] no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700.

52. Even if the court determines that removal is reasonably foreseeable, this court should order Mr. Qasemi's release because he is not a danger to the community. *Id.* at 700.

53. Under the Due Process Clause of the Fifth Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that s/he should not be detained. Mr. Qasemi in this case has been denied that opportunity. ICE does not make decisions concerning aliens' custody status in a neutral and impartial manner. The failure of Respondents to provide a neutral decision-maker to review the continued custody of Mr. Qasemi violates Mr. Qasemi's right to procedural due process. Further, Respondents have failed to acknowledge or act upon Mr. Qasemi's administrative request for release in a timely manner. There is no administrative mechanism in place for Mr. Qasemi to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates *Zadvydas*.

54. In *Black v. Decker*, the Second Circuit recently clarified that the three-factor *Mathews v. Eldridge*, 424 U.S. 319 (1976), test guides determinations of whether immigration detention remains constitutionally sound. *See* 103 F.4th 133, 150-51. The three factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

55. First, in *Black* the Court explained that the interest 1226(c)-detained noncitizens hold "'is the most significant liberty interest there is—the interest in being free from imprisonment.'"

9

*Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2nd Cir. 2020). The Court noted that noncitizens detained under 8 U.S.C. § 1226(c) possess the same liberty interest as noncitizens detained under any other statute. *See id.* And, it highlighted that 1226(c)-detained noncitizens lack any administrative mechanisms by which they could challenge their detention. *See id.* Here, because Mr. Qasemi has been detained in civil immigration detention since on or about May 1, 2024, Mr. Qasemi, too, possesses the same liberty interest as Black and G.M.

56. Second, the *Black* Court found that there is high risk of erroneous deprivation of rights for 1226(c)-detained noncitizens because there are "almost nonexistent procedural protections in place for section 1226(c) detainees[.]" *Id.* at 152. The court observed that while 1226(c)-detained noncitizens possess due process protections in other adjacent domains—such as the ability to ask for *Matter of Joseph* hearings, which resolve whether they may be subjected to mandatory detention—those mechanisms are insufficient in covering over the deficient processes noncitizens possess for requesting their actual release. *See id.* The Court thus concluded that 1226(c)-detained noncitizens are faced with even higher "risk[s] of erroneous deprivation" of their private liberty interests than 1226(a)-detained noncitizens. *See id.* Here, Mr. Qasemi has not received any mechanism that would ensure an impartial adjudication of his continued detention. Rather, the only review of Mr. Qasemi's continued detention has been by ICE. Therefore, Mr. Qasemi's risk of erroneous deprivation is thus markedly high.

57. Third and lastly, the Second Circuit determined that the competing government interest in preventing a 1226(c)-detained noncitizen from receiving a bond hearing is minimal. The court outlined that the government possesses two primary interests in denying mandatorily-detained noncitizens from receiving a bond hearing at this stage: ensuring the noncitizen's appearance at

10

proceedings and protecting the community from danger. *See id.* at 153-54. The court, however, indicated these interests are not undercut by the relief *Mathews* provides in a procedural sense. It assessed "at any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." *Id.* Since the procedural protection that flows out of the first two *Mathews* factors does not overburden the government's interest at the third factor, the court found relief reasonable and necessary.

## CLAIM FOR RELIEF

### COUNT ONE:

### *MR. QASEMI'S PROLONGED DETENTION VIOLATES THE UNITED STATES CONSTITUTION*

58. Mr. Qasemi realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

59. Noncitizens who have been detained by DHS pursuant to its statutory authority under 8 U.S.C. § 1231(a) for over six months must be released from custody if there is no significant likelihood that they will be removed in the reasonably foreseeable future.

60. Continuing to detain Mr. Qasemi under 8 U.S.C. § 1231(a)(6) while there is no significant likelihood of his removal in the reasonably foreseeable future deprives him of his "strong interest in liberty," and therefore violates the Fifth Amendment of the United States Constitution. *U.S. v. Salerno*, 481 U.S. 739, 750 (1987). It further poses actual and substantial hardships and irreparable injuries to Mr. Qasemi.

61. Mr. Qasemi has no adequate remedy at law other than the instant petition for a writ of habeas corpus.

## PRAYER FOR RELIEF

WHEREFORE, I pray that this Court grants the following relief:

1. Assume jurisdiction of this matter;

2. Use its authority under 28 U.S.C. § 2243 to:

   i. Order the Respondent to file an Answer and Return within 3 days of the filing of the petition, unless they can show good cause for additional time;

   ii. Order Petitioner's Reply be filed 15 days after the Court sets the deadline for Respondent's Answer and Return;

   iii. Order the Respondent not to transfer Petitioner outside the Western District of New York during the pendency of this Petition;

3. Issue a writ of habeas corpus ordering the Respondent to immediately release Petitioner with reasonable terms of supervised release; and

4. Grant any further relief that this Court deems just and proper.

I affirm, under penalty of perjury, that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.

Respectfully submitted,

DATED:   January 2, 2025

*/s/ Naim N/*

Naim Qasemi
A# 029-091-854
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

12

# Exhibit A

Naim Qasemi
A# 029-091-854
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020

# Naim Qasemi's Declaration

My name is Naim Qasemi, and I am currently detained at the Buffalo Federal Detention Facility (BFDF) since May 1, 2024. I came here when I was ten years old, my parents were assassinated during the Afghanistan War, and I was tortured by the Russian regime. I fled from a Russian school and was brought into Pakistan where I lived in a camp before I came to the United States on June 9, 1989, as a refugee, as an I94. In 1997 I was granted political asylum. I have lived in the United States for the past 35 years. I have one child who was born in Manhattan, New York, and who is autistic, and who depends on me and his mother.

When I arrived in the United States I was placed in foster care. There, I endured abuse because I could not speak English and because of my Afghan culture. As I adopted the American culture, I was moved to different places and found myself that I could not fit in. I thought it was me but it was not. Each time I tried to speak to the social workers about my abuse, it was by describing it with my hands since I did not know the English language. The social workers thought that the best thing for me was to move me from one place to the next. I would like to say that I feel that the system failed to protect me because I blame most of my convictions on them since I had no one to guide me. At the time I was not capable of making my own decisions. I was not smart enough to distinguish between those that got me in trouble. I was diagnosed with PTSD from the trauma I faced in Afghanistan and growing up in foster care.

I have been self-employed for the past 15 years. I owned a small coffee truck that sold doughnuts and other food items. With this type of business I was able to connect with many people which enabled me to have an active community engagement. I have paid taxes through my permit and vendor license. I have family ties here in the United States. I have six brothers and two sisters who are U.S. citizens.

Although I have a criminal history, it does not make me a bad person. My 1995 crime was before I was granted asylum, therefore, my political asylum should not have been revoked based on my conviction. In 2007, I had an immigration hearing, I was never notified while I was detained by the U.S. Immigration and Customs Enforcement (ICE). As a result, an Immigration Judge ordered me excluded due to in absentia. My political asylum was revoked. Then, ICE tried to deport me but they had issues obtaining my travel documents. I was then released under an order of supervision. I was detained by ICE again in 2010, and then I was released because ICE could not obtain my travel documents since Afghanistan does not recognize me as one of their

citizens. I do not have either an Afghanistan birth certificate nor a passport. All these times I have been rejected because the country of Afghanistan does not recognize me as one of their citizens.

On October 21, 2024, ICE attempted to remove me once again without any success. I was flown from the United States into Abu Dhabi, United Arab Emirates (UAE). At UAE, I was rejected into continuing my flight into Afghanistan because I did not have the proper travel documents. ICE is currently still attempting to remove me with no travel documents. That is without Afghanistan's authorization. I was further punished upon my return to BFDF by the officers because they blamed me for not completing their task. ICE charged me with a failure to comply since they were not able to complete my deportation to Afghanistan. I was placed in Special Housing Unit (SHU) for ten days. I appealed the charges but was denied by George P. Harvey, Assistant Field Office Director. They claim that I am guilty because I allegedly refused to travel even though I boarded the plane all the way to the UAE, which I have the flight stubs to prove. They currently keep claiming that I am impeding with my deportation. But on numerous occasions I have inquired about my situation by either sending messages through the tablet request application or by speaking to certain ICE Deportation Officers when they come into my housing unit.

As of March 22, 2022, there is no Afghanistan consulate in the United States because the Taliban closed all their offices in the United States, which have been relocated to Qatar. Back in 2007 and in 2010, ICE could not deport me because they could not obtain my travel documents. But now that there are no Afghanistan consular offices in the United States, they are still trying to produce travel documents. In my personal investigation I spoke to the Afghanistan Consulate Office in Canada on December 17, 2024, and they told me that they reject me and will not produce travel documents for me. In fact, I had BFDF Lieutenant Sikorski as a witness during this conversation. I have no family in Afghanistan. All of my family is here in the United States. I have an autistic child which I do not want to be separated from.

Overall, the reason I am giving you my background is because if I return to Afghanistan I will be tortured, prosecuted, and beheaded by the Islamic law for a few reasons. For example, due to my American culture and, particularly, because I am gay. Being gay in an Islamic country is a death sentence. Especially, in a Taliban regime. Also, I am Christian, that is I do not practice the Islamic culture. I became Christian because I was discriminated by being gay and Muslim. As a Christian I was accepted as a gay man. Since 1996 the Taliban has been in power, the country does not have a government. It is ran by rebels making up their own law. In fact, the United Nations nor the United States do not recognize the Taliban to be the government of Afghanistan. For these reasons, I currently applied for the Convention Against Torture and I am trying to reopen my case. I identify as an American just as the rest of my family.

America is my home. I have been here in the United States for the past 35 years. The thought of

being separated from my son reminds me of the terrible memories of when I was separated from my parents. I do not want my American son to go through such an experience. I do not want him to be traumatized as I am. I thank you for the opportunity to let me express my concerns.

   I, Naim Qasemi, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and recollection.


Respectfully,

*NAIM* 01-02-25
Naim Qasemi
A# 029-091-854
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 14020